Richardson J.
delivered the opinion of the Court.
The principle upon which this case turns, is that decided in Smith’s, Addington’s, and Fuller’s cases, to wit: that upon the defendant returning to this State, ho was remitted to his original sentence. The present defendants, after going abroad, repented of the alternative they had chosen, and accordingly returned to South Carolina, and were brought before the Courts in order to have another day assigned for the infliction of their sentence. All sentences must he passed in open Court, and in the presence of the party. Exposure to the public eye is a material part of every sentence, and leads to much judicial consideration. In every case, the defendant may show cause why the sentence ought not to be passed: for instance, he may show that he is not the same man, that he has been pardoned, or any other cause, if sufficient to arrest or suspend the sentence: and the Judge passes the sentence, or not; and when he doubts upon the facts, he may call to his aid the powers of the jury. All this may happen in any case. Rut, all immediate steps preliminary to passing the sentence, are, according to the case made by the defendant; and. are necessarily, within the discretionary powers of the Judge—subject always, of course, to an appeal to this Court.
Suppose, for illustration, that, these very defendants had received no pardon from the Governor; but the sheriff had omitted, for any reason, to inflict their sentences on the day assigned; it would in such case, he easy to perceive, when the defendants were brought before the Court a second time, that they stood in statu quo; i. e., remitted to their former sentence, with their rights neither enhanced nor attenuated. And the Judge would have but to allow the defendants their original right of showing cause; and in default of sufficient cause, to reiterate the former sentence, but assigning another day for the infliction, because the day first assigned had passed away; and no matter for what cause, the law must not bo eluded.
How can it make any rational difference, that the defendants had received a pardon, which they accepted, or rather pretended to accept, and then would not adhere to its condition, which is the sine qua non of the pardon. But in the meantime, *351 and in this way, the day assigned for the infliction of the sentence had passed by. This can make no difference, unless a little complexity of circumstances is to put the Court out of its established order of proceeding, or unless this may be done by the finesse or inconsistent conduct of defendants, or by accident.
If the defendants had been involuntarily brought back to this State, or were not really the men before convicted, or could raise any legal bar ou t of the pardon, or show any other good cause—did they not stand as when originally brought up for sentence? They certainly stood, in the second instance, as in the first, i. e., precisely the same parity of right, o f law, and of reason; i. e.. they were still simply convicts, brought before the Court 1:o be again sentenced, because they had so far eluded it.
Referring now to the express grounds of the present appeal, for what were they to be again indicted? Their going abroad and returning to punishment, belonged to their own tree elec. iion. But suppose an indictment lay for violating the pardon; could the defendants force that proceeding on the State? Suppose a capital case, and the sentence death, to what purpose try the misdemeanor at all? Again; why distinguish these particular defendants by the form of a written rule to show cause? Is it beca uso they had delayed their sentence, and troubled the sheriff u second time? And lastly; why should they receive any more formal notice, than when their sentence was originally passed? All the proceeding, by rules, bench warrants, and recognizances, were to bring the defendants before the Court; but when there, they stood as if they had never been out of the custody of the sheriff. Were they to be treated as men who knew not their former trial, or their sentence, or how they had managed to postpone its infliction? Surely not. In a word, they had come back to stand before the Court as convicts, and no more; unless trifling with the executive mercy, and the law, can give them additional claims. Against such views of the case, the argument has been, not but that the defendants were called upon with the usual solemnity to show cause, &c., but that this was done only in *352 the common way, viva voce. Whereas it was urged, that there must be a written formula, as was practised in Smith’s case, 1 Bail., 283, and in Addington’s case, 2 Bail., 512, though not in Fuller’s case, 1 M’C., 178. No one can find fault with the proceeding by a written rule; but this was not a point made in either of those cases. The judicial decision in all those cases, was, that the defendants, by returning to the State, or not going out in the prescribed time—which was Fuller’s case —were remitted to the original sentence, which is the principle of all my reasoning in the present case. Yet, certainly, it is well to follow approved and established practice; it prevents surprise; but wc have nothing of the kind, and are left to decide the case upon its analogy, or rather identity, with ordinary cases. And the Court can perceive no error in law, nor danger in the Judge following the general usages of our Courts in passing sentences.
The motion is therefore dismissed.
Evans J., FROst J., and Withers J., concurred.
Wardlaw J. dissented.